❏ Original

CLERK'S OFFICE
A TRUE COPY
May 18, 2021
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.  **21-M-399 (SCD)** |
| The cellular device assigned with Vehicle | ) | |
| Identification Number (VIN) | ) | |
| 1C4SDJH98MC643044 | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

    See Attachment A.

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

    See Attachment B.

        **YOU ARE COMMANDED** to execute this warrant on or before      6-1-21 _____ *(not to exceed 14 days)*
    ❏ in the daytime 6:00 a.m. to 10:00 p.m.      ☑ at any time in the day or night because good cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Stephen C. Dries _____.
                                                                                        *(United States Magistrate Judge)*

        ☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
        ☑ for  30  days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____.

| | | |
|---|---|---|
| Date and time issued: | 5-18-21. 1:25 pm | *Judge's signature* |
| City and state: | Milwaukee, WI | Stephen C. Dries, U.S. Magistrate Judge |
| | | *Printed name and title* |

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.  Records and information associated with the cellular device assigned Vehicle Identification Number (VIN) 1C4SDJH98MC643044 ("the SUBJECT ACCOUNT"), with an unknown listed subscriber, that is in the custody or control of AT&T Corporation (AT&T or Provider), a wireless communications service provider that is headquartered at North Palm Beach, Florida.

2.  The SUBJECT ACCOUNT.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

     a.  The following subscriber and historical information about the customers or subscribers associated with the SUBJECT ACCOUNT for the time period **April 10, 2021, to Present:**

          i.  Names (including subscriber names, user names, and screen names);

          ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

          iii.  Local and long distance telephone connection records;

          iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

          v.  Length of service (including start date) and types of service utilized;

          vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the SUBJECT ACCOUNT, including:

      (A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      (B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received, as well as per-call measurement or timing advance data (PCMD, RTT, True Call, Advance Timing, NELOs, or equivalent).

b.  Information associated with each communication to and from the SUBJECT ACCOUNT for a period of 30 days from the date of this warrant, including:

    i.  Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

    ii.  Source and destination telephone numbers;

   iii.  Date, time, and duration of communication; and

      All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the SUBJECT ACCOUNT will connect at the beginning and end of each communication, as well as per-call measurement or timing advance data (PCMD, RTT, True Call, Advance Timing, NELOs, or equivalent).

2

c. Information about the location of the SUBJECT ACCOUNT for a period of 30 days during all times of day and night. "Information about the location of the SUBJECT ACCOUNT" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

    i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the SUBJECT ACCOUNT on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

    ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that will assist in arresting Shaft A. DARBY, who was charged with possession with intent to distribute more than five grams of a controlled substance within 1000 feet of a public school, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) & 2(a); and possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2), on or about October 12, 2020. DARBY is the subject of an arrest warrant issued on March 3, 2021, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

4

**CLERK'S OFFICE**
**A TRUE COPY**
**May 18, 2021**
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  **21-M-399 (SCD)** |
| The cellular device assigned with Vehicle Identification Number (VIN) 1C4SDJH98MC643044 | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

❏ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 860(a); 18 U.S.C. §§ 924(c) & 2(a); 18 U.S.C. §§ 922(g)(1) & 924(a)(2) | possession with intent to distribute more than five grams of a controlled substance within 1000 feet of a public school; possession of a firearm in furtherance of a drug trafficking crime; possession of a firearm by a felon |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of  30  days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Kathrine L. Karlsen*
*Applicant's signature*

Kathrine Karlsen, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone _____ *(specify reliable electronic means)*.

Date:  5-18-21

*Stephen C. Dries*
*Judge's signature*

City and state:  Milwaukee, WI

Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Kathrine L. Karlsen, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned with Vehicle Identification Number (VIN) 1C4SDJH98MC643044 ("the SUBJECT ACCOUNT"), with an unknown listed subscriber, that is in the custody or control of AT&T Corporation (AT&T), a wireless communications service provider that is headquartered at North Palm Beach, Florida. As a provider of wireless communications service, AT&T is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2.      The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require AT&T to disclose to the government the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.     Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace

device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  See 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

4.     I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since May of 2019.  I have been assigned to the Milwaukee Area Safe Street Task Force since October of 2019.  Prior to being employed as a Special Agent with the FBI, I was employed as a Staff Operations Specialist for the FBI for approximately nine years.  I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by the law to conduct investigations of and to make arrests for federal felony arrests.

5.     As a Special Agent, I have participated in the investigation of narcotics-related offenses, resulting in the seizure of illegal drugs, weapons, United States currency, and other evidence of criminal activity.  As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances.  Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the narcotics traffickers and abusers of controlled substances.  I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover operations, court-ordered wiretaps, analysis of phone and

2

financial records, and the arrests of numerous drug traffickers. I have also been the affiant of search warrants. Additionally, I have spoken with other experienced narcotics investigators on numerous occasions concerning the method and practices of drug traffickers and money launderers. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

6. In addition to my experience in the investigation of individuals involved in federal criminal offenses, I also have knowledge and experience in the apprehension and prosecution of individuals involved in federal criminal offenses. I am familiar with and have experience in the use of cellular devices used to commit those offenses as well as the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their locations.

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. Shaft A. DARBY (DARBY) (DOB: xx/xx/1991) is the subject of an arrest warrant issued on March 3, 2021. Based on the facts set forth in this

3

affidavit, there is probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting DARBY.

9.      The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. S*ee* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10.      On or about March 2, 2021, DARBY was charged by Indictment with possession with intent to distribute more than five grams of a controlled substance within 1000 feet of a public school, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) & 2(a); and possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). The Indictment is currently sealed. *See United States v. Shaft A. Darby and Marquan L. Clemmer*, 21-CR-48.

### Criminal Offense Details

11.      On October 12, 2020, at approximately 2:15 p.m., law enforcement officers were conducting surveillance at Al's Wheels and Deals, a business located at 4270 N. 76th Street in Milwaukee, Wisconsin. Law enforcement was acting in an undercover capacity and operating in an undercover government vehicle.

12.      At approximately 2:42 p.m., law enforcement observed a gray in color 2014 Jeep Grand Cherokee SUV bearing Wisconsin registration plate of 470-ZEC (VIN# 1C4RJFDJ9EC395246), hereinafter referred to as the "gray Jeep," enter the

4

parking lot of Al's Wheels and Deals. Law enforcement then observed the gray Jeep parked next to a black in color 2018 Jeep Grand Cherokee SUV bearing Wisconsin registration plate of ABE-3330 (VIN# 1C4SDJH98MC643044), hereinafter referred to as the "black Jeep."

13.     On October 12, 2020, at approximately 3:54 p.m., law enforcement observed DARBY, wearing a tan Burberry hat, black hooded sweatshirt and black jeans, exit the gray Jeep.  Law enforcement then observed DARBY enter the black Jeep. DARBY was then observed reversing the black Jeep towards the overhead door to the building of 4270 N. 76th Street. Law enforcement then observed DARBY exit the driver door and open the tailgate of the black Jeep. At this time, law enforcement was not able to observe DARBY's actions due to the position of other vehicles obstructing their view. Law enforcement conducting surveillance advised other officers regarding the above-described observations.

14.     DARBY was then observed getting back into the driver seat of the black Jeep and parking the vehicle next to the gray Jeep. Affiant then observed a subject, later identified as Marquan L. CLEMMER (DOB: xx/xx/1995), retrieve a purple "Bape" hooded sweatshirt from the rear passenger compartment of the gray Jeep. Affiant then observed CLEMMER open the rear left passenger door of the black Jeep. During this time affiant was not able to observe CLEMMER's actions while he was near the rear passenger door of the black Jeep.

15.     Additional law enforcement officers then entered into the parking lot of Al's Wheels and Deals. At this time, the driver door of the gray Jeep was open. As

5

law enforcement exited the squad car and began walking towards the Jeep, CLEMMER exited the front passenger door of the gray Jeep and began running westbound towards N. 76th Street. DARBY exited the driver seat of the gray Jeep and fled westbound around the rear of the gray Jeep and then back northbound near the front entrance from where the officers entered.

16.     During flight, CLEMMER ran up onto a vehicle and jumped off the vehicle over a chain link fence surrounding the parking lot of Al's Wheels and Deals. Law enforcement followed CLEMMER and apprehended him on the median across the street of N. 76th Street. Upon CLEMMER's arrest, law enforcement located in his front right pants pocket four cell phones. Law enforcement also located a loaded black Glock 48 9 mm semi-automatic handgun from the bottom of CLEMMER's left side pants leg. CLEMMER also had a Jeep key fob around his neck and was also in possession of $80.00 in U.S. currency.

17.     During flight, law enforcement gave DARBY multiple verbal commands to "stop." DARBY disregarded the verbal commands and continued to flee on foot. Law enforcement followed DARBY and observed DARBY throw a pill bottle on the roof of 4302 N. 76th Street. Law enforcement then apprehended DARBY.

18.     While standing in the parking lot of Al's Wheels and Deals, law enforcement observed the pill bottle that DARBY threw on the top of the roof of 4302 N. 76th Street. Due to strong winds, the pill bottle blew off of the roof, and law enforcement located and secured the pill bottle, which was revealed to contain

6

approximately 57 Oxycodone Hydrochloride 30 mg pills, a Schedule II controlled substance. The pill bottle did not contain a prescription label.  Upon arrest, DARBY was found to be in possession of four cell phones, $2,920.10 in U.S. currency, and approximately 2 grams of marijuana.

19.     A search of both Jeeps was thereafter conducted. A search of the gray Jeep revealed the following, which list is non-exhaustive:

a.   Open box 150 count sandwich bags in center console;

b.  A large dry freezer bag containing clear plastic bags that contained approximately 497.51 grams of marijuana on the front passenger floorboard;

c.  Drum magazine for firearm under front passenger seat;

d.  Tan FN BG 9mm semi-automatic (Serial # CSU0057167) handgun on the rear passenger floorboard in the middle of the compartment;

e.  WI auto plates, ABR5696, AAF4004, and AHT2100, in the trunk; and

f.  $120.00 in U.S. currency in the passenger door handle.

20.     A search of the black Jeep revealed the following, which list is non-exhaustive:

a.  Bottle of suspected promethazine with no label, weighing 70.91 grams with the bottle, in driver door map pocket;

b.  A cellular phone in glove box;

c.  Large clear plastic "pound bag" containing marijuana residue on passenger rear floorboard;

d.  Black backpack on passenger side rear seat containing a total of $67,410.00 in U.S. currency, clear plastic bags that contained

7

approximately 134.92 grams of marijuana, a digital scale, and identifiers of "Terrance M. CLEMMER";

e. Gray duffle bag containing a large clear plastic dry freezer bag containing approximately 449.33 grams of marijuana; and

f. WI registration plate AJT-1610 in trunk.

21. Video surveillance of Al's Wheels and Deals captured DARBY and CLEMMER on the day of their arrest. Surveillance depicts DARBY exiting the gray Jeep, operating the black Jeep, and meeting with another individual, who switches out the license plates of the black Jeep. DARBY is then observed driving the black Jeep to a location near the gray Jeep, which he then enters. DARBY and CLEMMER are both observed exiting the gray Jeep. Eventually, CLEMMER is depicted retrieving a black backpack from the gray Jeep and placing it in the rear compartment of the black Jeep. This black backpack matches the description of the black backpack that contained a large sum of U.S. currency and marijuana located in the black Jeep.

22. On November 5, 2020, at approximately 12:30 p.m., DARBY and Terrya Bolden, the mother to DARBY's children, paid $550.00 to have the black Jeep released to them from the City of Milwaukee Tow Lot, located at 3811 W. Lincoln Avenue, Milwaukee, Wisconsin.

## The matte-gray Dodge Durango Hellcat and the SUBJECT ACCOUNT

23. On April 28, 2021, United States Magistrate Judge William E. Duffin authorized a pen register/trap and trace and cell site/ping warrant for the cellular device associated with VIN 1C4RJFN97JC310127, the black Jeep.

8

24. On April 30, 2021, case agents received historical location data for the black Jeep. The data showed that the Jeep was in the area of 45th Street and US-41 in Highland, Indiana, from April 5, 2021, to April 28, 2021. Case agents researched the area and found several car dealerships in the proximity of the historical location data. Additionally, case agents found the black Jeep to be listed for sale out of Highland, Indiana, at truecar.com. The advertisement listed the black Jeep to be sold from Thomas Dodge Chrysler Jeep Ram of Highland, Indiana, a car dealership within close proximity of the location data of the black Jeep.

25. On May 4, 2021, case agents spoke to the business manager at Thomas Dodge Chrysler Jeep of Highland Inc. located at 9604 Indianapolis Boulevard, Highland, Indiana, who informed case agents that DARBY and Terrya Bolden traded in the 2018 Jeep Grand Cherokee Trackhawk for a matte-gray 2021 **Dodge Durango Hellcat** with **VIN 1C4SDJH98MC643044** on March 30, 2021.

26. On March 31, 2021, at approximately 10:34 a.m., case agents observed DARBY exit the rear of the residence located at 8324 W. Center Street, Milwaukee. DARBY used the keypad to open one of the two garage doors behind the target residence. Case agents observed DARBY drive a matte-gray **Dodge Durango Hellcat** from the garage, out the alley and turn north on 84th Street.

27. The **Dodge Durango Hellcat** is currently registered to DARBY and Terrya L. BOLDEN at address 8324 W. Center Street in Milwaukee, Wisconsin.

28. Based upon information regarding DARBY's vehicle trade-in, the registration information for the **Dodge Durango Hellcat**, and case agents'

9

observations of DARBY operating the **Dodge Durango Hellcat**, case agents believe DARBY is currently operating the **gray Dodge Durango Hellcat**.

29.     Furthermore, DARBY has been traffic stopped and has fled from law enforcement in various instances in 2019 and 2020. Specifically, DARBY fled from law enforcement on or about April 23, 2019, in the area of 6800 W. Hampton Avenue, and on or about March 18, 2020, in the area of 8400 W. Hampton Avenue. Additionally, DARBY was traffic stopped on or about August 15, 2019, in the area of N. 72nd Street and W. Ruby Avenue, and on or about October 3, 2019, in the area of N. 75th Street and W. Courtland Avenue.[1]

30.     Case agents also believe that DARBY knows and/or believes that law enforcement is searching for him because of his criminal activities.

31.     Based upon DARBY's pattern of fleeing from law enforcement, including on the day of his arrest in October 2020, case agents believe that it is likely for DARBY to act in accordance when he encounters law enforcement. Therefore, agents believe that the requested warrant will allow them to not only determine DARBY's location to arrest him, but to also reduce the risk of danger posed to the apprehending officers.

32.     Furthermore, your affiant knows through communications with other law enforcement members that newer vehicles, such as a 2021 Dodge Durango, are

---

[1] DARBY has an active Felony Milwaukee Police Department suspect alert for fleeing/Eluding (Citation # BF906634-1).

10

frequently equipped with cellular modems inside their vehicles. These cellular modems are assigned a unique cellular identifier and generate historical and prospective records similar to a traditional cellular phone. The unique cellular identifier is associated with a specific VIN. These records can assist law enforcement in identifying the location of the vehicle including patterns of travel and areas where the subject may reside or frequent.

33. Most Original Equipment Manufacturers (OEMs) have partnered with AT&T or Verizon to provide cellular connectivity within their vehicles.

34. A check of open source information from AT&T identifies the **2021 Dodge Durango Hellcat** as a vehicle that has a built in WiFi hotspot that is serviced by AT&T, identified as the SUBJECT ACCOUNT.

35. In my training and experience, I have learned that AT&T is a company that provides cellular communications service to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) cell-site data, also known as "tower/face information" or cell tower/sector records, and (2) E-911 Phase II data, also known as GPS data or latitude-longitude data.

36. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be

11

10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

37.     Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

38.     E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. E-911 Phase II data is typically more precise than cell-site data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the SUBJECT ACCOUNT, including by initiating a signal to determine the location of the SUBJECT

12

ACCOUNT on the Service Provider's network or with such other reference points as may be reasonably available.

39.     Providers may also be able to provide information regarding the estimated distance that the phone was located from the tower at the time the communication occurred.  This information is referred to by various names, including round-trip time (RTT – Verizon), per-call measurement-data (PCMD – Sprint), True Call, Advance Timing, NELOS, or equivalent.

40.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

41.     Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of

13

payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT ACCOUNT's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

42.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

43.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

44.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the SUBJECT ACCOUNT on the Service Provider's network or with such other reference points as

14

may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

45. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the SUBJECT ACCOUNT would give that person an opportunity to destroy evidence, change patterns of behavior, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

46. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any

15

time of day or night, owing to the potential need to locate the SUBJECT ACCOUNT

outside of daytime hours.

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular device assigned Vehicle Identification Number (VIN) 1C4SDJH98MC643044 ("the SUBJECT ACCOUNT"), with an unknown listed subscriber, that is in the custody or control of AT&T Corporation (AT&T or Provider), a wireless communications service provider that is headquartered at North Palm Beach, Florida.

2. The SUBJECT ACCOUNT.

# ATTACHMENT B

## Particular Things to be Seized

## I.    Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the SUBJECT ACCOUNT for the time period **April 10, 2021, to Present:**

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the SUBJECT ACCOUNT, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received, as well as per-call measurement or timing advance data (PCMD, RTT, True Call, Advance Timing, NELOs, or equivalent).

b. Information associated with each communication to and from the SUBJECT ACCOUNT for a period of 30 days from the date of this warrant, including:

    i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

    ii. Source and destination telephone numbers;

    iii. Date, time, and duration of communication; and

All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the SUBJECT ACCOUNT will connect at the beginning and end of each communication, as well as per-call measurement or timing advance data (PCMD, RTT, True Call, Advance Timing, NELOs, or equivalent).

c. Information about the location of the SUBJECT ACCOUNT for a period of 30 days during all times of day and night. "Information about the location of the SUBJECT ACCOUNT" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

   i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the SUBJECT ACCOUNT on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

   ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

3

## II. Information to be Seized by the Government

All information described above in Section I that will assist in arresting Shaft A. DARBY, who was charged with possession with intent to distribute more than five grams of a controlled substance within 1000 feet of a public school, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) & 2(a); and possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2), on or about October 12, 2020. DARBY is the subject of an arrest warrant issued on March 3, 2021, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

4